

FILED
FEB 03 2021

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESSE BOYD BROWN OTTER,<br><br>Defendant. | 1:18-CR-10027-CBK<br><br>OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE |

## INTRODUCTION

Defendant pleaded guilty to possession of a firearm by a prohibited person – a felon. He was sentenced on May 13, 2019, to 46 months custody, reduced by three months for time served in tribal custody for the same conduct – resulting in a 43 months sentence, followed by three years supervised release. He is currently imprisoned at USP Leavenworth in Leavenworth, Kansas. The Bureau of Prisons ("BOP") has calculated his current release date as October 27, 2021. https://www.bop.gov/inmateloc/ visited January 26, 2021.

Defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Defendant contends that his medical conditions, including hypertension and obesity, his history of smoking, and the fact that COVID-19 is widespread at USP Leavenworth are extra-ordinary and compelling reasons which justify his release. He seeks a reduction of sentence to time served. Defendant has served, as of January 28, 2021, 844 days, or 28 months of his 43 months sentence, about 65%. Defendant requests that he be released to reside in McLaughlin, South Dakota, which is on the Standing Rock Indian Reservation.

## DECISION

The Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, § 212, authorized, *inter alia*, the district court, upon motion for the Director of the BOP, to reduce a prison term after considering the factors set forth in 18 U.S.C. § 3553(a), "if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Effective November 1,

2006, the United States Sentencing Commission adopted Guidelines § 1B1.13, the policy statement on reduction of a term of imprisonment pursuant to § 3582(c)(1)(A). These provisions are known as the compassionate release provisions of the federal criminal code and the Federal Sentencing Guidelines.

Pursuant to the First Step Act of 2018, the district court is now authorized to grant compassionate release upon motion of a defendant after the exhaustion of administrative remedies. Pub. L. 115-391, § 603(b), 18 U.S.C. § 3582(c)(1)(A). The government does not contend that defendant has failed to exhaust his administrative remedies.

In evaluating a request for compassionate release, the district court is required to consider the factors set forth in section 3553(a), to the extent that they are applicable, and may reduce defendant's sentence of imprisonment if it finds that

(1) (a) extraordinary and compelling reasons warrant such a reduction, or

(b) the defendant is at least 70 years of age and has served at least 30 years in prison for the offense or offenses for which the defendant is currently imprisoned

and

(2) the defendant is not a danger to the safety of any other person or the community.

18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13.

Defendant requests compassionate release based upon his medical conditions, including a history of hypertension and obesity, and the fact that COVID 19 is wide-spread in the BOP system. Chief Judge Lange has observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

2

United States v. Frost, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) *citing* United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant is 39 years old. He has a history of hypertension for which he takes prescribed medication, which appears to control his blood pressure. He states that he also suffers from obesity but he has not been diagnosed with obesity and is receiving no treatment for that condition. During the presentence interview in late 2018, defendant reported that he was in good physical health. At that time he was 6' tall and weighed 215 pounds. His BOP medical records show that in June 2020 he weighed 256 pounds. Although medical records were received in December 2020, no more recent weight information was contained in the records. Defendant argues that his bodily mass index ("BMI") is over 34, a level at which the CDC describes as obese. Defendant, a former smoker, also claims to have a 15-year history of smoking cigarettes, which he claims puts him at a higher risk for severe illness from COVID-19.

The CDC has set forth a non-exhaustive list of underling medical conditions that place a person at an increased risk for severe illness from COVID-19: cancer, chronic kidney disease, COPD, Down Syndrome, heart conditions, immunocompromised state, obesity (BMI of 30 or higher), severe obesity (BMI of 40 or higher), pregnancy, sickle cell disease, smoking, and Type 2 diabetes mellitus. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, visited January 25, 2021. Those who, *inter alia*, have hypertension or are overweight (BMI of 25) "might be at an increased risk" for severe illness. *Id*. Defendant qualifies as obese, although he has not been diagnosed as such, but is not a current smoker. Only his obesity places him in the category of a person at increased risk for severe illness from COVID-19.

Defendant was tested for COVID-19 on September 17, 2020. That test was reported positive on September 19, 2020. Defendant was quarantined and screened for symptoms regularly. He denied having any symptoms of COVID-19 during the course of the infection. Several studies have suggested that those having COVID antibodies may be protected from reinfection for six months. University of Minnesota Center for Infectious Disease Research and Policy ("CIDRAP"), Study: COVID antibodies may fend off reinfection for 6 months, December 28, 2020, https://www.cidrap.umn.edu/news-perspective/2020/12/study-covid-antibodies-may-fend-reinfection-6-months, visited January 25, 2021; REUTERS, COVID-19 reinfection unlikely for at least six months, study finds, November 20, 2020, https://www.reuters.com/article/us-

health-coronavirus-reinfection/covid-19-reinfection-unlikely-for-at-least-six-months-study-finds-idUSKBN28015L, visited January 25, 2021. The Minnesota CIDRAP article discusses the "SIREN Study" conducted by Public Health England. Susan Hopkins, a senior medical advisor at Public Health England and the SIREN study lead, stated that if "you already had the disease and are protected, you can be reassured it is highly unlikely you will develop severe infections." GOV.UK Press Release, Past COVID-19 infection provides some immunity but people may still carry and transmit virus, January 14, 2021, https://www.gov.uk/government/news/past-covid-19-infection-provides-some-immunity-but-people-may-still-carry-and-transmit-virus, visited January 25, 2021. *See also*, The British Medical Journal, Covid-19: Past infection provides 83% protection for five months but may not stop transmission, study finds, BMJ 2021, 372, January 14, 2021, https://www.bmj.com/content/372/bmj.n124, visited January 2, 2021.

Defendant is housed at the United States Penitentiary Leavenworth in Leavenworth, Kansas. That institution currently has four inmate and five staff confirmed cases of COVID-19. https://www.bop.gov/ coronavirus/, visited January 25, 2021. While Leavenworth has had a high number of cases – 734 inmates and five staff have recovered – the current number of infections is low. *Id*. USP Leavenworth houses 1,535 inmates. The current level of COVID-19 infections in that facility is remarkably low. Defendant is counted among the inmates who have recovered. Two inmates have died of COVID-19 at USP Leavenworth during the pandemic.

Corson County, South Dakota, has a population (2019) of 4,086. https://www.census.gov/quickfacts/fact/table/corsoncountysouthdakota/AFN120212, visited January 25, 2021. McLaughlin, South Dakota, has a population of (2017) 679. https://www.city-data.com/city/McLaughlin-South-Dakota.html, visited January 25, 2021. As of January 25, 2021, Corson County has reported 459 confirmed positive cases of COVID-19. There are currently six positive cases in the county. Eleven people have died of COVID-19 in Corson County. https://doh.sd.gov/COVID/Dashboard.aspx, visited January 25, 2021. The nearest Indian Health Service Hospital is 25 miles away in Ft. Yates, North Dakota.

Defendant has cited four cases from the BOP where an inmate was diagnosed with COVID-19, apparently had no symptoms for a period of time, and subsequently died. Such tragic cases also occur outside of BOP facilities. I have set forth statistics in many other cases which show that living on an Indian reservation in South Dakota is not safer than living in a BOP facility.

The Federal Bureau of Prisons ("BOP") is part of the federal government's "operation warp speed," an effort to quickly distribute the COVID-19 vaccine to federal prisons. https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp, visited January 21, 2021. All BOP facilities are expected to receive their first dose of the vaccine by mid-February. *Id.* The distribution of the vaccine in South Dakota has gone much slower. South Dakota just began vaccinating persons aged 65 years and older, starting with those age 80 years and older. The vast majority of residents who are not over the age of 65 years or are not in an occupation subject to a high risk for infection are not expected to receive a vaccine until at least May 2021. COVIDVaccineAvailability_Distribution (1).pdf, available at https://doh.sd.gov/COVID/Vaccine/default.aspx, visited January 21, 2021. The Indian Health Service has not released any vaccine distribution timeline information on its web site. https://www.ihs.gov/coronavirus/, visited January 21, 2021.

While COVID-19 certainly constitutes a severe public health risk, the unfortunate reality is that defendant's risk of reinfection at USP Leavenworth has not been shown to be any higher than his risk of contracting the virus residing in South Dakota. If he has sudden, severe, recurring symptoms despite his apparent recovery, his access to health care on an Indian Reservation in South Dakota is inferior to that at a Federal Bureau of Prisons facility.

Defendant's medical conditions are being managed at USP Leavenworth. That facility clearly has engaged in efforts to protect inmates as the spread of COVID-19 has been drastically reduced. Under the circumstances, defendant's current health conditions do not establish extraordinary and compelling reasons justifying his early release.

Even if I found that, in this defendant's case, the COVID-19 pandemic constituted cause for compassionate release, I would not order defendant's release. The sentencing factors set forth in 18 U.S.C. § 3553(a) do not warrant an early release. Defendant is a danger to himself and to the community.

In December 2017, defendant was a passenger in an automobile that was stopped for a traffic violation. The officer had information that defendant was dealing drugs out of a vehicle matching the description of the vehicle stopped. A drug dog alerted to the vehicle and the vehicle was further searched. Two handguns and ammunition, along with drug paraphernalia were discovered in the vehicle. The defendant admitted that he possessed the guns and had hid them in the vehicle during the traffic stop. He claimed that he was helping a friend sell the

firearms. Defendant had four prior Utah state felony convictions for distribution of possession with intent to distribute a controlled substance in 2005 and 2006 when he was 24 years old. More recently, in 2017 and 2018, he had tribal court convictions for possession of drug paraphernalia and domestic violence. Defendant was initially released on bond pending trial in this federal criminal case. Within a month he had used methamphetamine three separate times and had violated a tribal no contact order arising out of his tribal domestic violence conviction. He was thereafter detained pending conclusion of the criminal proceedings.

Defendant's presentence investigation report and BOP medical records show that, prior to his pre-trial detention in this case, he used opiates weekly and methamphetamine daily. As is often the case, he not only used methamphetamine, but also sold it to support his habit. His conviction for possession of firearms while being a felon and a drug user/seller is a public safety threat. Defendant had previously been employed as a fire fighter while residing in Utah. However, he moved to the Standing Rock Indian Reservation in 2005. He reported income only during a three-month period during 2016. To his credit, he has not had a conviction for distribution of a controlled substance since 2006. Nonetheless, he did not demonstrate any form of financial support for himself and his drug habit other than suspected drug distribution. Despite his release pending trial of his federal firearm charge, he continued to use methamphetamine. Although he apparently sought drug treatment through the BOP's RDAP program, he had not received any treatment during his incarceration. He is thus still at risk of using and, to support his habit, selling drugs.

## ORDER

I find that defendant is not entitled to compassionate release. Accordingly,

IT IS ORDERED that defendant's motion, Doc. 54, for compassionate release is denied.

DATED this 30th day of January, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge